**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**3:08cv516-MOC
(3:03cr127-1)**

| | | |
|---|---|---|
| **RICHARD OLTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | <u>**MEMORANDUM OF**</u> |
| | ) | <u>**DECISION AND ORDER**</u> |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon Petitioner's Motion to

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

(Doc. Nos. 1 & 2.)  Also before the Court is Respondent's Motion for

Summary Judgment.  (Doc. No. 10.)

## I.     FACTUAL AND PROCEDURAL HISTORY

On July 26, 2004, Petitioner was charged by superseding indictment

with conspiracy to possess with intent to distribute cocaine, cocaine base,

and heroin, in violation of 21 U.S.C. § 846 and 841 (2000) (Count One),

possession with intent to distribute cocaine and heroin, in violation of 21

U.S.C. § 841 (2000) (Count Two), possession of a firearm by a convicted

felon, in violation of 18 U.S.C. § 922(g)(1) (2000) (Count Three), and

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (2000) (Count Four). (Case No. 3:03cr127-1, Doc. No. 81.) Counsel filed a pre-trial motion to suppress certain evidence and all statements made by Petitioner on the night of his arrest. (Id. at Doc. No. 46.) After holding a hearing on the Motion, Magistrate Judge Carl Horn issued a Memorandum and Recommendation that the Motion be dismissed (id. at Doc. No. 60), which was accepted by the late District Court Judge Brent McKnight (id. at Doc. No. 69).

Trial began November 1, 2004, the Honorable William L. Osteen, Sr., presiding. Co-conspirator Kennedy Barkley, a convicted drug dealer and admitted heroin user (id. at Doc. No. 125: Trial Tr. at 73-77)[1], testified that he met Petitioner during the summer of 2002 at Petitioner's night club, The Vault (id. at 78-79). A couple of weeks later, the two "started talking about drugs." (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 81.) Petitioner knew Barkley's reputation as a drug dealer and that he had drug connections all over Charlotte. (Id. at 81-82.) Barkley testified that he purchased a total of eight or nine kilograms of cocaine from Petitioner (id. at 94), beginning with a purchase of approximately four and one-half

---

[1]Unless otherwise indicated, the page numbers in docket citations are those assigned by CM/ECF, the Court's electronic filing system.

ounces of cocaine in late August or early September of 2002 (id. at 86).

The transactions took place at a rental home that Barkley owned on

Maywood, The Vault, and parking lots at various businesses in Charlotte.

(Id. at 86-88.)  Barkley testified that he "cooked" powder cocaine into crack

at The Vault "one or two times" in the presence of Petitioner.  (Id. at 88.)

Additionally, Barkley observed Petitioner carry a ".357 with a rubber

handle" when they were "doing drug trafficking, or when he was down at

the club."  (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 96.)

On February 28, 2003, Barkley was stopped by Charlotte-

Mecklenburg Police Department ("CMPD") Street Drug Interdiction Unit

officers, who had been investigating his drug activities.  (Id. at 98; Doc. No.

124: Trial Tr. at 65.)  The stop yielded 200 grams of crack cocaine.  (Id. at

Doc. No. 124: Trial Tr. at 65.)  After he was read his Miranda rights,[2]

Barkley agreed to cooperate with law enforcement by identifying his

cocaine suppliers.  (Id.)  One was Petitioner, and Barkley agreed to

arrange a purchase of a kilogram of cocaine from him.  (Id. at 67.)

The transaction was to have taken place at Barkley's rental property

on Maywood.  (Id.)  However, when Petitioner arrived at the Maywood

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

residence, he did not have the cocaine with him. (Case No. 3:03cr127-1, Doc. No. 124: Trial Tr. at 69; Doc. No. 125: Trial Tr. at 14.) Instead, he and Barkley got into Petitioner's car and drove to another location, the Johnson Mills Apartments. (Id. at Doc. No. 124: Trial Tr. at 69-70.) The two went into the building together, but a few minutes later, Petitioner came out alone and was observed speaking briefly to an unidentified man in the driver's seat of a Chevrolet Monte Carlo. (Id. at 70.) In the meantime, Barkley called lead investigators CMPD Sergeant Ron Busker and Special Agent Rodney Blacknall of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who had followed Petitioner and Barkley from Maywood. (Id. at 70-72.) Barkley reported that he was in Apartment 105 and had seen a kilo of cocaine and several ounces of heroin. (Id. at 72-73; Doc. No. 125: Trial Tr. at 116.) Upon receiving that information, Sgt. Busker sent CMPD Officer Jeffrey Lang to apply for a search warrant for the apartment. (Id. at Doc. No. 124: Trial Tr. at 72.)

After spending a few minutes speaking with the man in the Monte Carlo, Petitioner went back into the apartment building. (Case No. 3:03cr127-1, Doc. No. 124: Trial Tr. at 73.) Shortly thereafter, Petitioner and Barkley came out of the building, got into Petitioner's car, and went

4

back to the Maywood residence.  (Id.)  Petitioner dropped Barkley off and then drove to a car wash less than a minute away.  (Id. at 74.)  Sgt. Busker and Agent Blacknall maintained surveillance on Petitioner for the 30 to 40 minutes that he was at the car wash.  (Id. at 75.)  As Petitioner was pulling out of the car wash, Sgt. Busker received a call from Officer Lang that the search warrant for Apartment 105 had been obtained.  (Id. at 75.)  He then requested a traffic stop of Petitioner's car.  (Id. at 76.)

CMPD Officer Robert Wise made the traffic stop.  He testified that he observed Petitioner driving 52 miles per hour in a 35- mile per hour zone and initiated the stop, at which time Petitioner "immediately slammed on brakes and stopped in the fast lane."  (Case No. 3:03cr127-1, Doc. No. 124: Trial Tr. at 36.)  Petitioner got out of the car at Officer's Wise's request.  (Id. at 38.)  After being asked twice to produce a driver's license, Petitioner "bladed his body" and began reaching for his back pocket.  (Id. at 39.)  Officer Wise, fearing for his own safety, placed Petitioner in handcuffs, whereupon Petitioner disclosed that he was carrying a gun.  (Id. at 40.)  Officer Wise located a loaded .357 Smith & Wesson revolver in Petitioner's waistband.  (Id.)

During a search incident to arrest, Officer Wise recovered $5,300 in

cash from Petitioner's pants pocket and $7,000 in cash in the front console of Petitioner's car.  (Id. at 45.)  No drugs or drug paraphernalia were found in the vehicle.  (Case No. 3:03cr127-1, Doc. No. 124: Trial Tr. at 50.)

Sgt. Busker and Agent Blacknall arrived to assist Officer Wise within minutes of the stop.  (Id. at 46, 76.)  Sgt. Busker testified that he read Petitioner his Miranda rights (id. at 78), and Petitioner "advised he did not need an attorney" and "wanted to speak to [the officers]" (id. at 82). Petitioner also agreed to cooperate with the search of the Johnson Mills apartment, admitting to having "a little over a thousand grams" there, although he did not specify the type of drug or drugs.  (Id. at 83.)

Consistent with Sgt. Busker's testimony, Agent Blacknall testified that Petitioner was read his Miranda rights and agreed to waive those rights and "cooperate with law enforcement."  (Id. at Doc No. 125: Trial Tr. at 219.)  At Petitioner's request, Sgt. Busker and Agent Blacknall walked with him down the street and away from people who were standing on a nearby porch.  (Case No. 3:03cr127-1, Doc No. 125: Trial Tr. at 219-220.) Petitioner then acknowledged that he had drugs and about $20,000 in cash at Apartment 105.  (Id. at 220.)  He would not, however, identify his customers or suppliers out of fear for his family's safety.  (Id. at  229.)

Petitioner told Agent Blacknall that he had been renting the apartment for his girlfriend, who recently had been killed in a car accident. (Id. at 226.)

Officer Lang was waiting at the Johnson Mills apartment with a search warrant when the officers and Petitioner arrived. (Id. at 221.) The officers gained entry into the apartment with a key given them by Petitioner. (Id. at 10.) Officer Lange and other CMPD officers searched the apartment, locating approximately one and a half kilograms of cocaine, 138 grams of heroin, and $59,863 in cash. (Case No. 3:03cr127-1, Doc No. 125: Trial Tr. at 17, 22, 28, 42.) Petitioner was present during the search and pointed out the cocaine and heroin to officers. (Id. at 53, 223, 248.)

Following the Government's evidence, Petitioner testified and denied ever having been "in the drug business." (Id. at Doc. No. 126: Trial Tr. at 50.) He also denied discussing drugs with Barkley and that Barkley "cooked" cocaine at The Vault. (Id. at 31-32.)

Contradicting the officers' testimony, Petitioner testified that after he was read his Miranda rights, he told Sgt. Busker and Agent Blacknall that he did "not wish to answer any question without the presence of [his] attorney" and that his attorney was Norman Butler. (Id. at 27-28). He denied knowing that there was cocaine and heroin in Apartment 105 and

directing officers to their location within the apartment.  (Id. at 28, 33.)

Prior to the defense resting, the parties stipulated that an individual named Bovel Barnes[3] would have testified, had he been able, that he paid Petitioner approximately $7,200, mostly in cash, for the purchase of kitchen equipment from The Vault.  (Case No. 3:03cr127-1, Doc No. 126: Trial Tr. at 63.)  The Court instructed the jury that it could consider the stipulation as evidence.  (Id. at 64.)

On November 5, 2004, the jury found Petitioner guilty of all four counts.  (Id. at Doc No. 97.)  On June 7, 2005, the Court sentenced him to 300 months' imprisonment followed by a ten-year term of supervised release.  (Id. at Doc. 107.)

Petitioner filed a notice of appeal, arguing that the district court erred in denying the motion to suppress and that there was insufficient evidence to convict him under 18 U.S.C. § 924(c) and 21 U.S.C. § 841(b)(1)(b). United States v. Olton, No. 05-4655, 2007 WL 2005141 (4th Cir. July 10, 2007) (unpublished) (per curium).  The Fourth Circuit Court of Appeals affirmed on July 10, 2007.  Id.  Petitioner also filed a petition for writ of

_____

[3]In the trial transcripts, the court reporter spells Mr. Barnes's first name "Bovee." (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 252.)  In an affidavit filed as an exhibit to Petitioner's responsive pleading, Mr. Barnes spells his first name "Bovel."  (Doc. No. 18-1 at 7: Barnes Aff.)  The Court, therefore, will use Mr. Barnes's spelling, rather than the court reporter's.

certiorari in the United States Supreme Court, which was denied.  Olton v. United States, 552 U.S. 1031 (2007).

Petitioner then filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (Case No. 3:03cr127-1, Doc. No. 133), which was denied on February 13, 2008 (id. at Doc. No. 138).  He filed a motion for reconsideration (id. at Doc. No. 140), which also was denied (id. at Doc. No. 146).  Petitioner appealed (id. at Doc. No. 147), and on September 16, 2008, the Fourth Circuit affirmed by unpublished opinion, United States v. Olton, 293 F. App'x 202, 203 (4th Cir. 2008).

On November 13, 2008, Petitioner timely filed a Motion to Vacate, Set Aside or Correct Sentence.  (Doc. No. 1).  The claims raised in that Motion appeared to be that:  (1) his confession was obtained in violation of his Fifth Amendment rights (id. at ¶ 12(a)); trial counsel was ineffective for failing to adequately prepare for trial (id. at 17-20, ¶¶ 7-11); trial counsel was ineffective during the district court's Allen charge to the jury (id. at 20, ¶ 12); and trial counsel was ineffective for failing to seek a downward departure based upon Petitioner's deportation status (id. at 20, ¶ 13).[4]  The

_____

[4]Petitioner also alerted the Court that he wished to amend his Motion to Vacate to add a double jeopardy claim and to challenge the drug tax imposed upon him by the State of North Carolina.  (Doc. No. 1 at 8, ¶ 15).  The Court notified Petitioner that he had thirty (30) days to amend his Motion to Vacate to add these additional claims and that failure to do so would constitute abandonment of those claims.  (Id. at Doc. No. 3).

next day, Petitioner filed a second Motion to Vacate, Set Aside or Correct Sentence, along with a 25-page supporting memorandum. (Doc. Nos. 2 & 2-2.) The claims raised in that Motion appeared to be that: (1) the District Court abused its discretion by replacing a juror with an alternate juror (Doc. No. 2-2 at 8-13); (2) appellate counsel was ineffective for failing to raise the juror replacement issue on appeal (id.); (3) trial counsel was ineffective for failing to request a jury instruction that Petitioner could not conspire with a government agent (id. at 18-21); (4) the District Court erred when it failed to admit the testimony of Bovel Barnes (id. at 13-17); (5) the District Court erred when it denied Petitioner's motion for a mistrial (id.); (6) appellate counsel was ineffective for failing to appeal the denial of Petitioner's motion for a mistrial (id.); (7) the District Court erred in failing to include Petitioner in side bar conferences (Doc. No. 2-2 at 17-18); (8) trial counsel was ineffective for failing to advise Petitioner of his right to be present during side bar conferences (id. at 18); (9) appellate counsel was ineffective for failing to raise the side bar issue on appeal (id.); (10) trial counsel was ineffective for failing to object to the District Court's "improper colloquy" with the jury (id. at 21-22); and (11) appellate counsel was ineffective for failing

---

Petitioner did not file an amended motion; therefore, those claims have been abandoned.

to request the entire trial transcript before filing the appellate brief (id. at 22-23).  The Court notified Petitioner that it would treat the two Motions as a single motion to vacate.  (Doc. No. 3, at n.1.)

The Government filed a Response (Doc. No. 9) and a Motion for Summary Judgment (Doc. No. 10), arguing that Petitioner's claims of trial court error are procedurally defaulted because he could have raised them on appeal but did not and that the Government is entitled to judgment as a matter of law on all of Petitioner's ineffective assistance of counsel claims.  Petitioner subsequently filed a Response to the Government's Motion for Summary Judgment, asserting that the Government "misapprehended" the claims set forth in his § 2255 Motion.  (Doc. No. 18 at 1.)  Petitioner disavows raising any free-standing claims of trial court error.  (Id.)  All of his claims, he asserts, are that either trial counsel or appellate counsel failed to fulfill their responsibilities under the Sixth Amendment.  (Id.)

With that clarification by Petitioner, the claims now before this Court are:  (1) appellate counsel was ineffective for failing to challenge the voluntariness of Petitioner's confession (Doc. No. 18 at 1-2); (2) trial counsel was ineffective for failing to adequately prepare for trial; (3) trial counsel was ineffective for failing to object to the court's Allen charge; (4)

trial counsel was ineffective for failing to seek a downward departure based upon Petitioner's deportation status; (5) appellate counsel was ineffective for failing to challenge the trial court's replacement of a juror with an alternate juror; (6) appellate counsel was ineffective "for not properly seeking a Booker Remand at the retroactive time of Direct appeal" (Doc. No. 1 at 8); (7) trial counsel was ineffective for failing to request a jury instruction that Petitioner could not conspire with a government agent; (8) trial counsel was ineffective for failing to subpoena Bovel Barnes and Mary Springs; (9) appellate counsel was ineffective for failing to appeal the trial court's denial of Petitioner's motion for a mistrial; (10) trial counsel was ineffective for failing to advise Petitioner of his right to be present during all sidebar conferences; and (11) appellate counsel was ineffective for failing to request the entire trial transcript before filing the appellate brief.

## II.    APPLICABLE LAW

### A.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "As the Supreme Court has observed, 'this standard provides that the mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original). A genuine issue of fact exists if "'a reasonable jury could return a verdict for the nonmoving party.'" Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Anderson, 477 U.S. at 248).

"Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id. (citation omitted).

> A party opposing a properly supported motion for
> summary judgment may not rest upon the mere
> allegations or denials of his pleadings, but rather must
> set forth specific facts showing that there is a genuine
> issue for trial. Furthermore, neither unsupported
> speculation, nor evidence that is merely colorable or
> not significantly probative, will suffice to defeat a
> motion for summary judgment; rather, if the adverse
> party fails to bring forth facts showing that reasonable
> minds could differ on a material point, then,

> regardless of any proof or evidentiary requirements
> imposed by the substantive law, summary judgment,
> if appropriate, shall be entered.

Id. (internal citations and quotation marks omitted).

### B.    INEFFECTIVE ASSISTANCE OF COUNSEL

To establish ineffective assistance of counsel, a person challenging

his conviction or sentence must show both that counsel's performance was

deficient and that he was prejudiced as a result.  Strickland v. Washington,

466 U.S. 668, 687 (1984); see also Evitts v. Lucey, 469 U.S. 387, 396

(1985) (holding that the right to effective assistance of counsel extends to a

first appeal as of right).  To establish deficient performance, the challenger

must show that "counsel's representation fell below an objective standard

of reasonableness."  Strickland, 466 U.S. at 688.  In other words, he must

show that "counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at

687.  To establish prejudice, the challenger must demonstrate "a

reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  It is not enough, however, "to show that the errors

14

had some conceivable effect on the outcome of the proceeding." Id. at

693. Counsel's errors must be "so serious as to deprive the defendant of a

fair trial, a trial whose result is reliable." Id. at 687.

A court reviewing an ineffectiveness claim must apply a "strong

presumption" that counsel's representation was within the "wide range" of

reasonable professional assistance. Id. at 689. "The question is whether

an attorney's representation amounted to incompetence under 'prevailing

professional norms,' not whether it deviated from best practices or most

common custom." Harrington v. Richter, __ U.S. at __, 131 S.Ct. 770, 788

(2011) (quoting Strickland, 466 U.S. at 690).

## III. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

#### 1. Involuntary Confession

Petitioner claims that appellate counsel was ineffective for failing to

challenge the voluntariness of his confession on direct review.[5] (Doc. No. 1

---

[5]Petitioner unequivocally has waived any free-standing claim of trial court error or ineffective assistance of trial counsel with respect to the suppression hearing and admission of his incriminating statements at trial by stating in his Response to the Motion for Summary Judgment that his claims were not directed at trial court error (Doc. No. 18 at 1), and that paragraph 12(b)(2) of his Motion to Vacate (Doc. No. 1) makes it clear that his claim is one of ineffective assistance of appellate counsel for failing to claim on direct appeal that his confession was obtained in violation of his Fifth Amendment rights (Doc. No. 18 at 2).

at 4, 15-16 ¶¶ 5-6; Doc. No. 18 at 2-4.) This claim is without merit.

Petitioner's counsel, Norman Butler, filed a pre-trial motion to suppress the evidence seized from Petitioner, his car, and the Johnson Mills apartment, and any statements Petitioner made to police. (Case No. 3:03cr127-1, Doc. No. 46.) As is relevant here, the grounds cited for suppressing Petitioner's statements were that Petitioner did not knowingly or voluntarily waive his right against self-incrimination as guaranteed by the Fifth Amendment and that his statements were made outside the presence of counsel in violation of the Sixth Amendment. (Id. at ¶¶ 6-7.)

A suppression hearing was held before Magistrate Judge Horn. Sgt. Busker testified that shortly after Petitioner was arrested by Officer Wise, he and Special Agent Blacknall arrived at the scene. (Id. at Doc. No. 177, p. 14.) He read Petitioner his Miranda rights and asked if he wished to cooperate with respect to the drug investigation. (Id.) Sgt. Busker testified that Petitioner responded that he was willing to cooperate and, thereafter, made incriminating statements regarding the presence of drugs at an apartment in the Johnson Mills apartment complex. (Id. at 15-16, 30.) Sgt. Busker also testified that Petitioner did not request a lawyer at any point. (Id. at 17). On cross-examination, Sgt. Busker acknowledged that he did

not present Petitioner with a written waiver form to read and sign and that he never had Petitioner sign a written statement.  (Case No. 3:03cr127-1, Doc. No. 177 at 24.)  He denied that Petitioner told him that trial counsel was his lawyer and that he wanted to speak to him.  (Id. at 30-31.)  Sgt. Busker specifically denied any recollection of calling trial counsel on March 3, 2003 regarding Petitioner.  (Id. at 70.)

Special Agent Blacknall also testified at the hearing and corroborated that Sgt. Busker read Petitioner his rights shortly after he was arrested, that Petitioner orally waived them, and that he expressed a willingness to cooperate with the investigation.  (Id. at 65.)  Agent Blacknall also gave additional details regarding incriminating statements Petitioner made.  (Id. at 67-68.)  Like Sgt. Busker, Agent Blacknall denied on cross-examination that Petitioner had stated that trial counsel was his attorney.  (Id. at 73.)  He testified that had Petitioner made that statement, he would have called counsel; Agent Blacknall then recited counsel's telephone number from memory.  (Case No. 3:03cr127-1, Doc. No. 177 at 73.)  He also denied ever hearing Sgt. Busker call trial counsel's office.  (Id. at 75-76.)

In his Memorandum and Recommendation, Magistrate Judge Horn found as matters of fact that Sgt. Busker read Petitioner his Miranda rights,

that Petitioner agreed to cooperate, and that he made incriminating statements. (Id. at Doc. No. 60, ¶¶ M & N.) Magistrate Horn also concluded as a matter of law that Petitioner's post-arrest statements were voluntary. (Id. at 11.) The District Court accepted the Memorandum and Recommendation and denied Petitioner's Motion to Suppress. (Id. at Doc. No. 69.)

On appeal, counsel argued that the Court erred in denying the motion to suppress. Olton, 2007 WL 2005141, at *1. The ground asserted, however, was that Officer Wise did not have reasonable suspicion to stop Petitioner's car. Id. Petitioner claims that appellate counsel was ineffective for not also challenging the voluntariness of his statements to police.

Appellate counsel is not required to assert all non-frivolous issues on appeal, Jones v. Barnes, 463 U.S. 745, 752 (1983), but is accorded the "presumption that [s]he decided which issues were most likely to afford relief," Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Indeed, the Supreme Court has recognized the importance of having appellate counsel "examine the record with a view to selecting the most promising issues for review." Barnes, 463 U.S. at 752. "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from

evidence of incompetence, is the hallmark of effective appellate advocacy."
Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at
751). "'Generally, only when ignored issues are clearly stronger than those
presented, will the presumption of effective assistance of counsel be
overcome.'" Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v.
Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Had counsel alleged on appeal that Petitioner's statements were
involuntary, the appellate court would have reviewed this Court's findings of
fact for plain error, United States v. Richardson, 607 F.3d 357, 369 (4th
Cir.), cert. denied, ––– U.S. ––––, 131 S.Ct. 427 (2010), and would have
construed the evidence in the light most favorable to the Government,
United States v. Farrior, 535 F.3d 210, 217 (4th Cir. 2008). Additionally,
the court would have deferred to the trial judge's credibility determinations.
See United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008). Petitioner
has not identified any error in the factual findings based upon the evidence
presented at the suppression hearing. All of the evidence presented
showed that Petitioner was read his Miranda rights within minutes of his
arrest, that he waived them and agreed to cooperate with the investigation,
and that he made incriminating statements to investigators before and after
being taken to the Johnson Mills apartment. No evidence was presented

that he invoked his right to silence or to an attorney.  Consequently, there was nothing upon which the appellate court could have based a finding of plain error.

Had appellate counsel instead alleged that trial counsel rendered ineffective assistance by failing to introduce evidence that Sgt. Busker had called counsel's office on March 3, 2003, the Fourth Circuit would have declined to consider the claim.[6]  See United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006).  Claims of ineffective assistance of counsel are not cognizable on direct appeal unless the record conclusively establishes counsel's constitutionally inadequate performance.  Id.  There was nothing in the record before the Fourth Circuit showing that trial counsel possessed evidence impeaching Sgt. Busker's testimony that he did not call counsel's office.  Therefore, there was insufficient evidence in the record for the appellate court to address the issue of deficiency, let alone prejudice, under Strickland.

Having failed to show that challenging his statements as involuntary

---

[6]Petitioner asserts that Mr. Butler had evidence showing that Sgt. Busker had called his office on March 3, 2004.  (Doc. No. 1 at 15-16.)  Interestingly, in his cross-examination of Sgt. Busker during the suppression hearing, Mr. Butler asked Busker if he had called Butler's office on March 3, 2004.  (Case No. 3:03cr127-1, Doc. No. 177 at 70.)  During trial, however, Mr. Butler, asked Sgt. Busker if he had called his office on March 4, 2004.  (Id. at Doc. No. 124: Trial Tr. at 112.)

had a reasonable probability of success on appeal, <u>see</u> <u>Strickland</u>, 466 U.S

at 694, Petitioner has not overcome the presumption that appellate counsel

was effective under the Sixth Amendment.  <u>Smith v. Robbins</u>, 528 U.S. at

288 (citation omitted).  This claim, therefore, is DENIED.

## 2. Juror Replacement

Petitioner also claims that appellate counsel was ineffective for failing

to raise a challenge to the trial court's replacement of an absent juror.[7]

(Doc. No. 2-1 at 8-13; Doc No. 18 at 1, 4 ¶ (2).  This claim is without merit.

When the Court convened at 2:00 p.m. on the first day of trial, one of

the jurors was absent.  (Case No. 3:03cv127-1, Doc. No. 124: Trial Tr. at

3.)  The Court took up a series of unresolved motions with the parties, as

well as some other housekeeping matters.  (<u>Id.</u> at 3-12).  When that was

concluded, the juror still had not arrived, and the Court indicated its

inclination to replace the juror with an alternate.  (<u>Id.</u> at 12).  Counsel

objected, and the Court stated that it would wait until 2:30 for the absent

juror.  (<u>Id.</u> at 12-13).  When the juror still had not arrived by 2:30,  the Court

replaced him with the first alternate, stating that "[w]e're going to proceed

now because we are 30 minutes past the time that the jury was notified to

---

[7]Petitioner has waived any stand alone claim of trial court error.  (Doc No. 18 at
1, 4 ¶ (2)).

be here, and we all need to move along now."[8]  (Id. at 15-16.)  Trial counsel

registered an objection, thereby preserving the issue for appeal.  (Id. at 16).

"A defendant has a reasonable expectation that, barring unforeseen

circumstances, he will be tried by the jury selected."  United States v.

Nelson, 102 F.3d 1344, 1349 (4th Cir. 1996).  Rule 24(c)(1) of the Federal

Rules of Criminal Procedure, however, provides that alternate jurors shall

replace jurors who, before deliberation commences, "become or are found

to be unable or disqualified to perform their duties."  Id. (quoting Fed. R.

Crim. P. 24(c)(1)).  It is within the discretion of the district court to

determine whether adequate cause exists to replace a juror with an

alternate.  Id.  A district court will abuse its discretion only if its decision to

dismiss a juror rests "on an irrelevant legal basis or lack[s] factual support."

Id.  Even if the district court abuses its discretion in dismissing a juror,

however, "the objecting party must nevertheless establish prejudice"

resulting from that abuse.  Id.

"A juror's absence . . . manifestly interferes with the prompt trial of a

---

[8]Petitioner contends that the trial judge replaced the juror because he anticipated that the trial would be "fairly short[.]"  (Doc. No. 2 at 8 (citing 3:03cr 127-1, Doc. No. 124: Trial Tr. at 12).)  However, when read in context, it is evident that when he observed that Petitioner's would be a "fairly short case," the judge was explaining his reason for beginning the trial with only one alternate (Trial Tr. at 12:12-15, 15:24-16:7).  See Fed. R. Crim. P. 24(c)(1) (enabling the district court to impanel up to 6 alternate jurors).

case." United States v. Rodriquez, 573 F.2d 330, 332 (5th Cir. 1978).

Consequently, "when a juror is absent from court for a period sufficiently

long to interfere with the reasonable dispatch of business there may be a

sound basis for his dismissal." Id. (finding no abuse of discretion where

district court replaced absent juror with alternate prior to the start of trial,

where judge failed to ascertain the reason behind juror's absence and

defendant objected to seating of alternate).  Here, the trial court dismissed

the juror in question because his continued absence already had delayed

the opening of trial by 30 minutes.  (Case No. 3:03cv127, Doc. No. 124:

Trial Tr. at 15-16 ("We're going to proceed now because we are 30 minutes

past the time that the jury was notified to be here, and we all need to move

along now.").)

Had counsel challenged the Court's decision on appeal, it is not

reasonably probable that the Fourth Circuit would have found that the

Court abused its discretion.  See e.g., United States v. Peters, 617 F.2d

503, 505 (7th Cir. 1980) (affirming replacement with alternate when juror

was ten minutes late for court, and observing that the trial court acted out

of concern for maintaining the trial schedule and to avoid an additional day

of courtroom proceedings); United States v. Domenech, 476 F.2d 1229,

1232 (2d Cir. 1973) (replacement of juror who was ten minutes late not an

23

abuse of discretion given court's scheduling concerns and possible desire to avert a night sitting).  Petitioner's conclusory assertion that he was prejudiced by the Court's action because the racial composition of the jury was changed is insufficient to establish prejudice.  Petitioner does not provide any support for the notion that the absent juror would have voted to acquit him had he remained on the jury.

Counsel was not ineffective for failing to raise a claim on appeal that had no reasonable probability of success.  <u>Strickland</u>, 466 U.S at 694.  Therefore, this claim is DENIED.

## B.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### 1.    Preparation for Trial

Petitioner claims that trial counsel was not prepared for trial and that he was prejudiced as a result.  (Doc. No. 1 at 4 ¶ 7.)  Specifically, Petitioner contends that trial counsel did not receive any discovery until the day of trial and was ineffective for failing to seek a continuance to give himself time to review it.  (<u>Id.</u> at 4 ¶ 7, 7 ¶ 11.)

Petitioner's claim is based upon an inaccurate statement of the record.  The record shows that prior to trial, counsel had received all grand jury testimony, a copy of the plea agreement between the Government and

Kennedy Barkley, and all <u>Brady</u>[9] and Jencks Act[10] material, to the extent that it existed. (Case No. 3:03cr127-1, Doc. No. 124: Trial Tr. at 4-8.) Trial counsel also had reviewed the Government's case file, pursuant to its "open-file policy." (<u>Id.</u> at 6.) Petitioner's own evidence shows that prior to trial, counsel had compiled witness interviews, police reports, criminal histories of Kennedy Barkley and some of his known associates, crime lab reports, and other standard discovery materials. (Doc. No. 18-1 at 11-12: Letter from Norman Butler to Petitioner, Oct. 8, 2007.)[11]

The only "discovery" Petitioner identifies that was not provided to counsel prior to trial was investigators' "rough notes," which counsel previously had moved to preserve. (Case No. 3:03cr127-1, Doc. No. 45.) The Court granted the motion on the first day of trial. There is no evidence, however, that had he had those notes prior to trial, counsel would have prepared for trial differently or changed his trial strategy. Furthermore, Petitioner has failed to allege or to show that trial counsel would have moved for a continuance or that a continuance would have been granted

---

[9]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[10]18 U.S.C. § 3500 (2006).

[11]The letter from trial counsel identifies discovery counsel had provided Petitioner prior to trial.

based on the contents of the notes.[12]

Petitioner cannot show that counsel was unprepared for trial based upon a lack of discovery. He, therefore, cannot succeed on an ineffectiveness claim on this ground. Strickland, 466 U.S. at 687.

## 2. Government Agent Instruction

To prove conspiracy to possess cocaine with intent to distribute,"the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F. 3d 849, 857 (4th Cir. 1996) (citations omitted). A defendant cannot be convicted of conspiracy, however, if his only "co-conspirator" is an undercover government agent. See United States v. Lewis, 53 F.3d 29, 33 (4th Cir. 1995). Petitioner contends that Kennedy Barkley was a government agent and that trial counsel was ineffective for not requesting that the jury be instructed that a defendant cannot be convicted of conspiracy if his only co-conspirator was a government agent. (Doc. No. 2-2 at 18-21.)

The superseding indictment charged Petitioner with conspiring with

---

[12]There is no evidence in the record that the rough notes were preserved, requested by counsel, or turned over to trial counsel at any point during or after trial.

Barkley and others, known and unknown, to possess with intent to distribute cocaine and heroin from March 2002 through March 3, 2003. (Case No. 3:08cr127-1, Doc. No. 81 at 1.)  There was evidence at trial that Petitioner had been selling cocaine to Barkley for at least five months before Barkley was arrested for his own criminal activities.  (Id. at Doc. No. 125: Trial Tr. at 86, 94.)  Conversely, there was no evidence that Barkley was cooperating with police during that time.  Furthermore, there was testimony that Petitioner had been selling, on average, about five kilograms of cocaine a month (id. at 227) but that Barkley had purchased no more than nine kilograms from Petitioner over the life of the conspiracy (id. at 94).  Finally, there was evidence that Petitioner had distributors and customers who were large scale dealers whom Petitioner feared would harm his family if he disclosed their identities.  (Id. at 299.)  Consequently, even if Barkley could have been considered a government agent after February 28, 2003, the evidence at trial was sufficient to show that Petitioner was engaged in a conspiracy with Barkley and others that predated Barkley's arrest.  See e.g. United States v. Robinson, 186 F. App'x 375, 379 (4th Cir. 2006) (unpublished) (finding sufficient evidence to support conspiracy conviction where both of defendant's co-conspirators entered the conspiracy prior to their cooperation with law enforcement).

In light of the evidence of Petitioner's participation in the drug trafficking conspiracy, counsel's decision not to request a supplemental instruction that a defendant cannot be convicted of conspiring with a government agent[13] did not fall "below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Furthermore, Petitioner cannot show that had such an instruction been given, there is a reasonable probability that the jury would have concluded that he conspired only with Barkley and only after February 28, 2003. <u>See</u> <u>e.g.</u> <u>United States v. Tanner</u>, 628 F.3d 890, 906 (7th Cir. 2010), *petition for cert. filed* (June 9, 2011) (NO. 10-11027, 10A1102) (finding that the defendant would have benefitted from instruction only if jury was likely to conclude both (1) that the defendant conspired only with the government agents; and (2) that he did so only during the time when each man was a government agent). Therefore, this claim shall be DENIED.

### 3.    Issues Relating to Defense Witness Bovel Barnes

---

[13]In an affidavit filed by the Government in support of its Motion for Summary Judgment, Mr. Butler states that,

> [d]uring our numerous attorney client conferences, Mr. Olton understood that the conspiracy involved the prior drug sales that he had engaged in with Mr. Barkley and therefore not only did I not consider requesting a jury instruction that Mr. Olton could not engage in a conspiracy to sell drugs with a governmental agent but in my professional opinion there was no basis for such instruction in this case.

(Doc. No. 11 at ¶ 33.)

In an effort to explain the large amount of cash in Petitioner's car and on his person when he was arrested, trial counsel called Mr. Bovel Barnes, who testified that he had paid Petitioner approximately $7,200 in cash for some restaurant equipment. (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 253-54.) When counsel began to delve into Barnes's knowledge of Petitioner's truthfulness and honesty, however, the Government objected on the ground that it had not made Petitioner's truthfulness an issue in the case. (Id. at 255.) The Court sustained the objection, but noted that Mr. Barnes's opinion of Petitioner's truthfulness might become relevant if Petitioner himself testified. (Id. at 256.) The Court instructed the jurors that Mr. Barnes's testimony was not relevant at that time and that they were to disregard it. (Id. at 260.) The Court then released the jury for the day. (Id. at 262.)

Mr. Butler again raised the issue of Mr. Barnes's testimony, noting that he had not been offered primarily as a character witness but to testify that he had paid Petitioner a substantial sum in cash. (Id. at 263.) The trial judge agreed that the testimony about the money might be relevant and that if Mr. Barnes was recalled, he would not strike it if it was offered again. (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 263.)

The next morning, counsel made a motion for a mistrial based upon

the Court's striking of Barnes's testimony in its entirety, arguing that the testimony about the kitchen equipment purchase was relevant and should not have been struck.  (Id. at Doc. No. 126: Trial Tr. at 11.)  The Court agreed that the testimony was relevant and inquired as to the status of Barnes.  (Id.)  Counsel responded that Barnes had left the courthouse by the time the Court had given counsel the option of putting him back on the stand.  (Id. at 12.)  Counsel asserted that he had attempted to contact Barnes the previous evening and that morning with no success.  (Id.)  The Court denied the motion for a mistrial observing that counsel had been instructed to have Barnes present and had failed to subpoena him to be present.  (Id. at 13-14.)

After Petitioner had testified, the Court *sua sponte* negotiated a stipulation regarding Barnes's testimony about the equipment purchase. (Case No. 3:03cr127-1, Doc. No. 126: Trial Tr. at 60-62.)  The Government agreed to stipulate that Barnes could not be in court that day, but if he had been, he would have testified that he gave the defendant $7,200, mostly in cash, for kitchen equipment from The Vault, and that there were no receipts for the transaction.  (Id. at 61.)  Trial counsel read the stipulation to the jury (id. at 63), and the Court instructed the jury that it could consider the stipulation as evidence (id. at 64).

Petitioner claims that counsel was ineffective for failing to subpoena Barnes to ensure his presence in court.[14]  (Doc. No. 2-2 at 16.)  Petitioner also claims that appellate counsel was ineffective for not alleging on appeal that the trial court erred in striking Barnes' entire testimony and denying the motion for a mistrial.  (Id. at 16-17.)

Counsel's decision not to subpoena Barnes was not unreasonable. Mr. Butler informed the Court that he had prepared a subpoena for Barnes, but Barnes had agreed to testify without it.  (Case No. 3:03cr127-1, Doc. No. 126: Trial Tr. at 12-13.)  Additionally, Mr. Butler did not have the subpoena with him when he asked Barnes to testify for Petitioner.  (Id. at 13.)  True to his word, however, Mr. Barnes came to court and testified as requested.  (Id. at Doc. No. 125: Trial Tr. at 253-255.)  Mr. Butler could not have reasonably foreseen that the trial court would strike all of Mr. Barnes's testimony, and then, after Mr. Barnes had left, decide that Mr. Butler would be allowed to recall Mr. Barnes.  Mr. Butler attempted to contact Mr. Barnes after court and again that morning but was unable to reach him.[15]

---

[14]Petitioner has waived any underlying claim of trial error.  (Doc. No. 18 at 1.)

[15]In his affidavit, Mr. Butler states that "Mr. Barnes was not subpoenaed because he had assured [counsel] that he would be back to court on the next day."  (Doc. No. 11 at ¶ 36.)  In light of Mr. Butler's contemporaneous statements to the trial court (Case No. 3:03cr127-1, Doc. No. 126: Trial Tr. at 12-13) and the passage of time since trial, the undersigned finds that Mr. Butler's conflicting statement in his affidavit is not a falsehood but merely reflects a faulty recollection of the facts.

While the wiser course would have been to subpoena all witnesses before trial, Mr. Butler cannot be faulted for failing to anticipate the events that would unfold with respect to Mr. Barnes.[16]

Furthermore, Petitioner cannot show that he was prejudiced by counsel's failure to subpoena Barnes. See Strickland, 466 U.S. at 694. The only relevant testimony that Barnes would have provided was that he had paid Petitioner $7,200 for some restaurant equipment. (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 253-54.) The Government stipulated that Barnes would have testified as such. (Id. at Doc. No. 126: Trial Tr. at 61.) The Court instructed the jury that it could consider the stipulation as evidence. Petitioner's argument that because the jury had been told to disregard all of Barnes's previous testimony, it disregarded the stipulation as well, is pure conjecture. See e.g., Richardson v. Marsh, 481 U.S. 200, 206 (1987) (recognizing that the law presumes that jurors follow their instructions). Additionally, while the $7,200 may have explained a

_____

[16]Petitioner also claims that trial counsel was ineffective for failing to subpoena a potential witness, Mary Springs. According to Petitioner, Ms. Springs "would have provided testimony that would have directly contradicted testimony provided by the government witness and like [sic] refuted such to a degree that the government testimony would be declared spurious." (Doc. No. 2-2 at 15-16). An ineffective assistance of counsel claim cannot be sustained on such a conclusory allegation. Rules Governing § 2255 Proceedings Rule 2(b)(2), foll. § 2255. Because Petitioner has not provided any evidence to support this claim, it is denied.

portion of the $12,300 that was seized from Petitioner at the time of his arrest, it does not explain the presence of the nearly $60,000 in cash seized from the Johnson Mills apartment.[17]

Finally, Petitioner cannot show that he was prejudiced by appellate counsel's decision not to allege trial court error on appeal. See Strickland, 466 U.S. at 694. A mistrial should be declared when the district court finds that "there [i]s a manifest necessity for the mistrial or the failure to declare a mistrial would . . . defeat[ ] the ends of justice." Sanders v. Easley, 230 F.3d 679, 685 (4th Cir. 2000) (citing Wade v. Hunter, 336 U.S. 684, 690 (1949)). A district court's decision to grant or deny a motion for a mistrial is reviewed on appeal for abuse of discretion. United States v. Wallace, 515 F.3d 327, 330 (4th Cir. 2008). Abuse of discretion will be found if there is a"reasonable possibility that the jury's verdict was influenced" by the error upon which the motion for mistrial was based. United States v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992) (internal quotation marks omitted).

Assuming *arguendo* that it was error to strike Barnes's testimony regarding the restaurant equipment purchase, the trial court cured the error

---

[17]Petitioner testified that the money on his person and in his car when he was arrested came from the sale of restaurant and DJ equipment from The Vault. (Case No. 3:03cr127-1, Doc. No. 126: Trial Tr. at 23.) He testified further that he had intended to use the cash to buy a motorcycle and was on his way to a Suzuki dealership to make the purchase when he was stopped on March 3, 2003. (Id. at 23, 44-45, 52-54.)

by instructing the jury that it could consider as evidence the parties' stipulation that had he been present, Barnes would have testified that he paid Petitioner $7,200 in cash for restaurant equipment. Given the stipulation, the trial court's instruction, and the minor part, if any, the equipment transaction played in the trial, it is not reasonably probable that the appellate court would have found that the district court abused its discretion in denying the motion for a mistrial.

There being no reasonable probability of success on such a claim, appellate counsel was not ineffective for failing to raise it on appeal. See Strickland, 466 U.S. at 694. These claims, therefore, will be DENIED.

### 4. Absence at Sidebar Conferences

Petitioner asserts that the Court held a number of sidebar conferences with the attorneys and that he was not present at any of them. He claims that trial counsel was ineffective for failing to advise him of his right to be present at all sidebar conferences. (Doc. No. 2-1 at 18.)[18]

---

[18]Petitioner has waived any stand alone claim that he was deprived of his right to be present at all sidebar conferences. (Doc No. 18 at 1). Additionally, although the caption of his claim asks "[w]hether Appellate counsel was ineffective for failing to appeal the District Court error," Petitioner does not again mention appellate counsel or identify the alleged District Court error in the body of the claim. (Doc. No. 2-1 at 17-18). Therefore, to the extent Petitioner is attempting to raise an ineffective assistance of appellate counsel claim, it is dismissed pursuant to Rule 2(a) of the Rules Governing Section § 2255 Proceedings for the United States District Court.

The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment together guarantee a defendant charged with a felony the right to be present at all critical stages of his trial." United States v. Rolle, 204 F.3d 133, 136 (4th Cir. 2000). The Confrontation Clause requires the defendant's presence when testimony is presented against him. See United States v. Camacho, 955 F.2d 950, 953 (4th Cir. 1992) (citation omitted). As Petitioner does not allege that he was absent during witness testimony, the Sixth Amendment Confrontation Clause is not implicated. Instead, his claim is grounded in the Fifth Amendment's Due Process clause, which requires the defendant's presence in some situations where the defendant "is not actually confronting witnesses or evidence against him." Id. (citing United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam)).

"'[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" Gagnon, 470 U.S. at 526 (citation omitted). Consequently, a defendant has a right to be present at a sidebar conference only to the extent that "a fair and just hearing would be thwarted by his absence." Petitioner has not articulated how his absence at one or all of the sidebar conferences rendered his trial unfair or unjust.

Petitioner was present in the courtroom throughout the entire trial; defense counsel participated in all bench and chambers conferences; Petitioner has not alleged that he did not have adequate time to consult with his attorney about the conferences; and Petitioner does not allege that counsel failed to represent him effectively at those conferences.  See e.g. United States v. Feliciano, 223 F.3d 102, 112 (2d Cir. 2000) (holding harmless any error in conducting part of voir dire outside presence of defendants where counsel were present and participated in voir dire and defendants had ample time to discuss voir dire issues before peremptory challenges were made); United States v. McCoy, 8 F.3d 495, 497 (7th Cir. 1993) (finding no Due Process error where defendant was absent from sidebar conferences but his interests were sufficiently protected by counsel's presence); see also United States v. Valdez-Pacheco, 134 F.3d 381 (9th Cir. 1998) (unpublished) (finding no Due Process violation where defendant was absent from peremptory challenge conference, but defense counsel was present to protect defendant's rights).

Petitioner also contends that trial counsel should have advised him of his right to be present at the jury instruction conference between the trial judge and counsel.  (Case No. 3:03cr127-1, Doc. No. 125: Trial Tr. at 265; Doc. No. 126: Trial Tr. at 3-5.)  Petitioner asserts that had he been present,

he would have objected to the Court's instruction on conspiracy and would have insisted on an instruction regarding a defendant's inability to conspire with a government agent.

Petitioner had no right under the Federal Rules of Criminal Procedure to be present at such a conference.  Fed. R. Crim. P. 43(b)(3) (stating that a defendant is not required to be present where a "proceeding involves only a conference or hearing on a question of law").  Nor did the Due Process require his presence.  As demonstrated previously, there was no valid basis for requesting a government agent conspiracy instruction.[19] Again, Petitioner has not articulated how his absence at the jury instruction conference between the Court, the prosecutors, and trial counsel rendered his trial unfair or unjust.  This claim will be DENIED.  See Strickland, 466 U.S. at 687.

### 5.    Court's Colloquy with Jury

Petitioner asserts that the trial judged engaged in an improper colloquy with the jury during deliberations, putting pressure on them to reach a verdict quickly.  (Doc. No. 2-1 at 21-22.)  He claims trial counsel

---

[19]Petitioner's assertion that he would have insisted upon such an instruction is wholly self-serving and lacking in credibility.  There is no evidence before the Court that Petitioner was aware prior to post-conviction that a defendant cannot be convicted of conspiracy if his only "co-conspirator" is an undercover government agent.  See United States v. Lewis, 53 F.3d 29, 33 (4th Cir. 1995).

was ineffective for failing to object to the judge's "manipulative and coercive conversation." (Id. at 22.) For his part, trial counsel denies any memory of an inappropriate colloquy between the trial judge and the jury. (Doc. No. 11 at ¶ 41.) The undersigned has reviewed an unofficial transcript of the Court's interaction with the jury during deliberations and finds there is no basis for Petitioner's claim.[20]

As an initial matter, there was no "colloquy" between the Court and the jury or individual jurors. Toward the end of the day, the Court called the jury from its deliberations, noted the time, and informed the jurors that they did not have to conclude deliberations by 5:00 but could continue deliberating for as long as they wished that evening or return on Monday to continue. The Court then sent the jury back to deliberations, leaving the decision whether to continue past 5:00 p.m. or return Monday in its hands.

There was nothing coercive about the Court's statement to the jury,

---

[20]For reasons that are not clear to the undersigned, the parties' closing arguments, the trial judge's instructions to the jury, and the jury's return of verdict were recorded but not transcribed. In a related claim, Petitioner argues that appellate counsel was ineffective for failing to request a copy of the entire trial transcript before filing her brief in Petitioner's appeal. Had she done so, Petitioner argues, she would have found grounds to challenge the Court's "coercive" colloquy.

In light of these claims, and Petitioner's assertion that the trial judge gave an improper Allen charge, the undersigned requested an unofficial transcription of the jury instructions and the trial judge's subsequent interaction with the jury. Had there been evidence in the transcript that arguably could have served as support for Petitioner's claims, the Court would have ordered an official transcript for the record.

and there was nothing upon which counsel reasonably could have based an objection.  <u>Strickland</u>, 466 U.S. at 688.  As for Petitioner's claim of ineffectiveness on the part of appellate counsel, while it would have been the better practice for counsel to have requested the entire trial transcript, Petitioner has not shown that he was prejudiced by her failure to do so.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  These claims shall be DENIED.

## C. WAIVER

Rule 2 of the Rules Governing Section § 2255 Proceedings for the United States District Court requires that a Motion to Vacate must specify all of the grounds for relief available to the petitioner and state the facts supporting each ground.  Rule 2(a)(1)-(a)(2), foll. § 2255.  Petitioner makes the following allegations in his Motion to Vacate, for which he has provided no supporting facts:  ineffective assistance of appellate counsel "for not properly seeking a Booker Remand at the retroactive time of Direct appeal" (Doc. No. 1 at 8); ineffective assistance of trial counsel for failure to object to the Court's improper <u>Allen</u> charge[21] (<u>id.</u> at 20 ¶ 12); and ineffective assistance of trial counsel for failing to seek a downward departure in his

---

[21]<u>Allen v. United States</u>, 164 U.S. 492, 501-502 (1896) (finding no error in district court's supplemental instruction to a deadlocked jury).  The undersigned has reviewed an unofficial transcript of Judge Osteen's instructions and all subsequent communications with the jury.  There was no <u>Allen</u> charge to the jury.

sentence based upon his immigration status (id. at 20 ¶ 13).  These claims will be dismissed with prejudice.  Rule 2(a)(1)-(a)(2), foll. § 2255.

## IV.    CONCLUSION

The Court finds that Petitioner is not entitled to relief and that Respondent is entitled to summary judgment as a matter of law. Furthermore, pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that the dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

## V.    ORDER

For the foregoing reasons, **IT IS ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct

        Sentence (Doc. Nos. 1 & 2) is **DENIED** and **DISMISSED**;

2.     Respondent's Motion for Summary Judgment (Doc. No.

       10) is **GRANTED**; and

3.     A certificate of appealability shall not issue in this case.

**IT IS SO ORDERED.**

Signed: September 29, 2011

Max O. Cogburn Jr.
United States District Judge